IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ATLANTIC SOUNDING COMPANY, INC.** § | | **PLAINTIFF** |
| § | | |
| v. § | | Civil No.1:09CV346HSO-JMR |
| § | | |
| **JIMMIE VICKERS** § | | **DEFENDANT** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 52

THIS CAUSE came before the Court on October 12, 2010, for trial without a jury. This is a suit for Declaratory Judgment filed pursuant to 28 U.S.C.A. § 2201, by Atlantic Sounding Company, Inc. ["Atlantic"][1].

## I. PROCEDURAL HISTORY

On June 8, 2009, Atlantic filed a Complaint [1-1] for Declaratory Judgment against Jimmie Vickers ["Vickers"] pursuant to 28 U.S.C. §§ 1332 and 2201, and designated it as an admiralty and maritime cause of action under 28 U.S.C. § 1333 and FED. R. CIV. P. 9 (h). The Complaint sought determination of the following issues:

    1) whether Vickers is a Jones Act seaman;
    2) whether Vickers was injured as he claims on May 18, 2009;
    3) whether Vickers reached maximum medical improvement;
    4) whether Vickers willfully deserted his vessel without a justifiable reason; and
    5) that if it is determined that Vickers was a Jones Act seaman, then based on his actions, he is not entitled to maintenance and cure under admiralty law.

---

[1] Atlantic was one of several companies owned and operated by Weeks Marine, Inc.

Pl.'s Compl. ¶ VIII, at pp. 2-3.

On July 8, 2009, Vickers filed an Answer and asserted a Counter-Claim, pursuant to FED. R. CIV. P. 9 (h) and 13 [6-1]. Vickers claimed lost wages and maintenance and cure, on the grounds that:

> [u]nder general Maritime Law, a seaman who is injured during the course of the voyage is entitled to his wages for the remainder of the voyage which in this case have not been paid, is entitled to maintenance and cure until he reaches maximum medical recovery none of which has been provided although repeatedly requested. Counter-Plaintiff would show that he has suffered painful, disabling and what he believes to be permanent injuries as a proximate result of the unseaworthiness of the vessel and while serving as a seaman performing duties which contributed to the mission of the vessel, and that he has been willfully, wantonly, and capriciously denied maintenance and cure, and is entitled not only to receive same, as well as the wages for the remainder of the voyage, but also attorney fees, expenses, cost, and punitive damages as a result of the callous, willful, wanton and persistent refusal to pay maintenance and to provide cure.

Def.'s Counter-Claim at p. 9-10.

Prior to trial, counsel for Vickers withdrew and Vickers, proceeding *pro se,* moved to dismiss certain of his claims against Atlantic. On September 21, 2010, the Court entered an Order dismissing Vickers' Jones Act and unseaworthiness claims. [94-1]. Vickers retained his claim for maintenance and cure and his request for sanctions against Atlantic.

On October 12, 2010, the Court conducted a non-jury trial on the only remaining issues, Vickers' entitlement to maintenance and cure and Atlantic's position that it has no further obligation to pay maintenance and cure beyond what it has already paid on behalf of Vickers. During the trial, the Court admitted into evidence numerous

documentary exhibits and accepted testimony, both live and by deposition, from a number of witnesses.

The Court, having heard and considered all of the evidence in this case, as well as the arguments of the parties, having observed the demeanor of the witnesses, and having carefully read and considered the proposed findings of fact and conclusions of law submitted by the parties, now by a preponderance of the evidence makes the following Findings of Fact and arrives at the following Conclusions of Law:

## II. FINDINGS OF FACT

This lawsuit arises out of a maritime incident which occurred in Louisiana. On May 18, 2009, Vickers was working for Atlantic as a dredge tender operator. He was operating the M/V PANDORA in navigable waters near Morgan City, Louisiana, at approximately 10:00 a.m., when he took the PANDORA between a barge and a pontoon line. The PANDORA bumped the barge. Vickers allegedly lost his balance and fell against the boat console, injuring his left arm and shoulder. Vickers sustained no visible injuries as a result of this accident.

Captain Gadson Segree ["Segree"] who was employed by Atlantic as a dredge captain, was Vickers' superior on May 18, 2009. Segree testified that within a few minutes of Vickers' accident, he asked Vickers if he needed medical attention. Vickers responded in the negative and continued working. Paul Duresseau, a boatman for Atlantic who was also working on the PANDORA that day, testified that he did not observe Vickers fall or bump into the console. He further stated that there were rubber bumpers in place on the exterior of the PANDORA, as it was commonplace for the

vessel to bump into the pontoon line and/or the barge while dredging.  Within one hour of the accident, Vickers arrived at the crew quarterboat barge for lunch.  According to Vickers, he did not verbally request medical treatment at that time.

Segree testified that when Vickers arrived at the quarterboat for lunch, he complained of pain in his arm and shoulder associated with the accident, but he did not request medical care.  After finishing lunch, Vickers continued to complain of pain and expressed that he wanted to drive to the VA Gulf Coast Veterans Hospital ["VA"] in Biloxi, Mississippi.  At that point, Segree instructed Vickers to complete an injury report.  According to the report, Vickers' injury resulted from an accident which was not the fault of any person, company, or defective equipment.  Ex. P-7.  Segree further directed Vickers to see a doctor at the nearby Bourgeois Medical Clinic,[2] and to undergo an alcohol/drug screen while at Bourgeois.[3]  The evidence establishes that alcohol/drug tests were required to be performed at a medical facility, and that test kits were not stored onboard the vessels or administered by Atlantic personnel.[4]

Captain Bobby Mitchell accompanied Vickers to the Bourgeois Medical Clinic.

---

[2]This clinic was approximately 1½ miles from the quarterboat, and the Morgan City Hospital was less than one block from the Bourgeois Medical Clinic.

[3] The testimony established that Coast Guard regulations require alcohol testing to be conducted within two hours of an accident, while drug testing can be performed up to thirty-two [32] hours following an accident.

[4]Vickers' questioning of Segree raised the issue of the test kits not being kept onboard the vessel.  Vickers took the position that he should have been tested immediately following the accident while he was still on the vessel.

According to the evidence, Segree had some difficulty initially obtaining medical authorization for Vickers from the company on May 18, 2009. At approximately 1:00 p.m. that day, and before any alcohol or drug tests were administered, Vickers departed Morgan City and traveled to the VA Hospital in Biloxi. Captain Segree did not authorize or approve his departure. In fact, there were no further communications between Vickers and Segree following their conversation over the lunch hour.

Vickers testified that, as a licensed captain, he was aware of the Coast Guard regulation requiring tests to be administered within two hours of an accident necessitating medical attention. He was unaware that the actual tests for the two were different. Vickers also stated that he waited over three hours after the incident before departing for Biloxi, during which time he was never tested. Vickers underwent alcohol and drug testing at the VA Hospital in Biloxi between 5:30 and 6:00 p.m. that day, approximately seven or eight hours after the accident. No drugs were detected. Vickers maintained that he did not consume any alcohol or drugs on the date of the incident.

Following his initial treatment at the VA on May 18, 2009, Vickers continued to experience pain and difficulties with his left arm and shoulder. He received treatment at the VA again on June 8, 2009. At that time, an MRI was scheduled for July 2, 2009, at Keesler Air Force Base Hospital. This MRI was never completed. Vickers underwent a cervical MRI on August 7, 2009.

Vickers' attorney scheduled an appointment for him to see an orthopedic

surgeon, Dr. Chris Wiggins. On August 13, 2009, Atlantic Sounding received a report dated July 17, 2009, from Dr. Wiggins recommending surgery for a torn left rotator cuff. Thereafter, Atlantic scheduled an appointment for Vickers with Dr. Albert Pearsall, a board certified orthopedic surgeon connected with the South Alabama Medical School. On August 21, 2009, Atlantic Sounding obtained a report from Dr. Pearsall dated July 9, 2009, indicating that he felt Vickers suffered from an acute subacromial inflammation of the left shoulder with possible rotator cuff tear. By letter dated August 24, 2009, Vickers' attorney was provided with this report and advised that Atlantic Sounding would commence maintenance and cure, retroactively to the date of Vickers' injury. By letter dated August 26, 2009, Vickers' attorney was asked to forward any outstanding invoices from Dr. Wiggins to Atlantic Sounding for payment, along with the MRI of Vickers' left shoulder for review by Dr. Pearsall.

Atlantic Sounding received the MRI on August 28, 2009, and forwarded it to Dr. Pearsall for his opinion as to whether shoulder surgery was indicated. After reviewing the MRI, Dr. Pearsall confirmed on September 17, 2009, that surgery for a torn rotator cuff in Vicker's left shoulder would be appropriate. Atlantic Sounding authorized this surgery by letter dated the same day. Dr. Donnis Harrison, the physician chosen by Vickers, performed the surgery on October 2, 2009. Vickers underwent surgery on an outpatient basis.

Vickers was seen for follow-up treatment at Singing River Physical Therapy on October 8, 2009, based upon Dr. Harrison's rehabilitation protocol. Vickers attended

two sessions, the last one occurring on October 15, 2009. Vickers neither returned for future visits, nor gave any reason for not continuing with the required therapy. Dr. Harrison testified by deposition that physical therapy for this type of surgery was imperative. Plaintiff's Exhibit 28 was a letter from Singing River Rehabilitation Services dated January 11, 2010. It states in part that:

> Mr. Jimmy [sic] Vickers was initially seen on 10/8/09 for evaluation and treatment and attended two additional therapy sessions (10/13 & 10/15). He was receiving therapy based on Dr. Harrison's rehabilitation protocol for rotator cuff repairs and pain management. After the last physical therapy visit on 10/15/09 he did not return for future visits. . . . Mr. Vickers did not give this office a reason for not continuing or following through with therapy.

Ex. P-28.

Vickers was given the opportunity to provide evidence of extenuating circumstances for missing his physical therapy appointments, but he failed to tender any such evidence to Atlantic.

Vickers' past medical history demonstrates that he was involved in an automobile accident in December 1999, which caused injuries to his back. According to his treating physician, Dr. Jeffrey Katzell, after Vickers underwent back surgery in June 2003, he was assigned restrictions and advised that he would need additional back surgeries in the future. Ex. P-38, at p. 13. Vickers was also injured in a subsequent automobile accident in January 2006. Vickers sustained neck injuries and again saw Dr. Katzell. Ex. P-38, at pp. 10-11.

Tom Langan, Corporate Risk Manager for Atlantic, testified about Vickers'

application for employment with Atlantic and its associated medical questionnaire. Ex. P-1 & P-9. Vickers completed and signed both forms on January 14, 2009, and represented that he was in "excellent health" and had not undergone neck surgery. Ex. P-9. According to Langan, because Vickers' prior medical conditions were not disclosed, these omissions would have disqualified him for employment with Atlantic as a captain. In addition, Vickers signed the applicant certification section of the medical history questionnaire, which contained the following provision:

> I understand and agree that any misstatements of facts may cause forfeiture on my part of the job offered, may result in dismissal after employment, or may result in the loss of entitlement to disability benefits.

Ex. P-9.

Vickers' medical records, specifically Dr. Harrison's deposition testimony, also reveal that as of January 7, 2010, Vickers had normal range of motion in his left shoulder. Dr. Harrison lifted all work restrictions at that time. Ex. P-37, at pp. 20-21. In a February 5, 2010, letter to Dr. Harrison, Langan stated in relevant part that:

> We authorized Mr. Vickers to be treated for a work-related left shoulder injury. Mr. Vickers has never reported a work-related injury to the neck or right shoulder. We know that Mr. Vickers has a pre-existing cervical condition resulting from a non-work related automobile accident, and we have not received any medical evidence that this known pre-existing condition was permanently aggravated by the work injury on May 18, 2009. . . .
>
> If Mr. Vickers has had any further treatment for his work-related left shoulder condition, subsequent to January 7, 2010, please furnish copies of those records any [sic] explain why further curative treatment for the left shoulder condition is warranted.

Ex. P-31.

While Dr. Harrison did not submit any additional medical records, he did respond to an inquiry from Atlantic about Vickers' work restrictions on May 24, 2010. Among other things, Dr. Harrison opined that he did not "feel Mr. Vickers has any work restrictions, and that he can return to full duty and perform activities as tolerated." Ex. P-39. On December 28, 2009, Atlantic suspended any further maintenance payments to Vickers.

Vickers testified at trial that he began working offshore with the Gulf oil spill response team on or about May 25, 2010. Vickers was able to secure and maintain employment with National Response Center for BP as a vessel captain of an 110' supply vessel from May 25, 2010, until a week or so before the trial of this matter.

### III.   CONCLUSIONS OF LAW

**A.   Jurisdiction**

The Court has jurisdiction of the parties and of the subject matter, which is within the admiralty and maritime jurisdiction of the United States and of this Court.

**B.   Is Vickers Entitled to Maintenance and Cure Under Admiralty Law?**

1.   <u>Past Medical Expenses and Maintenance and Cure</u>

The Fifth Circuit Court of Appeals has explained that "[m]aintenance and cure are maritime terms describing a seaman's right to receive food and lodging (maintenance) and necessary medical services (cure)." *Complaint of Liberty Seafood, Inc.*, 38 F.3d 755, 757 (5th Cir. 1994) (internal citations omitted). While the doctrine

of maintenance entitles an injured seaman to food and lodging of the kind and quality he would have received aboard ship, the duty to provide cure encompasses the obligation to reimburse medical expenses actually incurred and to ensure that the seaman receives proper treatment and care. *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002). The obligation to pay maintenance and cure is independent of tort law and is not affected by a plaintiff's own negligence. *Id.*

The record establishes that Vickers has acknowledged and conceded that he has not incurred any living expenses associated with his injury. Nevertheless, Atlantic paid $4,500.00 in maintenance expenses on behalf of Vickers. The following summarizes the $21,917.11 in cure, by way of medical expenses, Atlantic has paid on behalf of Vickers due to the accident on May 18, 2009: 1) $3,312.31 to Bienville Orthopedic Clinic; 2) $477.85 for the MRI; 3) $339.07 in prescriptions; and 4) $17,787.88 in hospital payments to Singing River Hospital. Ex. P-32. The Court finds and concludes that all medical treatment payments made by Atlantic were related to this incident. The Court further finds and concludes that between May 18, 2009, and January 7, 2010, Atlantic incurred total expenses under its maintenance and cure obligation of $26,417.11, and that these expenses were reasonable and appropriate.

The duty to pay maintenance and cure ends when the seaman reaches the point of maximum medical improvement. *MNM Boats, Inc. v. Johnson,* 248 F.3d 1139, 1140 (5th Cir. 2001). The test for maximum medical improvement is "when it appears probable that further treatment will result in no betterment of the seaman's condition."

*Pelotto v. L & N Towing Company*, 604 F.2d 396, 400 (5th Cir. 1979)(citations omitted). In this case, the record reflects, and the Court concludes, that Vickers reached "maximum cure," on January 7, 2010, when Dr. Harrison found that Vickers had normal objective findings in his left shoulder and could return to full duty without any work restrictions. Vickers' claim for additional maintenance and cure beyond what has been paid is not supported by the evidence or the law, and will be denied. The Court concludes that, based on the record, "past medical expenses" and "cure" are, at least in this case, one and the same.

The Court also finds and concludes that Vickers' failure to complete the physical therapy protocol prescribed by Dr. Harrison amounts to willful misconduct and precludes any further maintenance and cure beyond what he has already received. Vickers' refusal to complete the physical therapy regimen prescribed by Dr. Harrison constitutes an abandonment of necessary medical treatment so as to bar any further maintenance and cure. *Coulter v. Ingram Pipeline, Inc.*, 511 F.2d 735, 737 (5th Cir. 1975); *Leocadio v. Lykes Bros. Steamship Co.*, 282 F. Supp. 573, 575 (E.D. La. 1968); *see Murphy v. American Barge Line Co.,* 169 F.2d 61, 64 (3d Cir. 1948).

    2. The *McCorpen* Issue

Atlantic Sounding paid maintenance and cure on behalf of Vickers without waiving any of its rights as an employer to rely on certain legal defenses to legitimately question a maintenance and cure claim. One such defense is that the seaman willfully concealed a preexisting medical condition from his employer. *McCorpen v. Central*

*Gulf S.S. Corp*, 396 F.2d 547, 549 (5th Cir. 1968). In order to establish a *McCorpen* defense, an employer must show that: (1) the plaintiff intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire him; and (3) a connection exists between the withheld information and the injuries complained of. *Id.* at 548-49.

The record and the evidence reveal, and the Court concludes, that Vickers failed to accurately disclose his medical history and prior medical conditions on his application for employment with Atlantic. Ex. 7. This act, in and of itself, could legally disqualify him from employment with Atlantic. Atlantic nonetheless paid maintenance and cure benefits on behalf of Vickers from May 18, 2009, until January 7, 2010. For this reason as well, the Court concludes that Atlantic owes no further obligation to Vickers to pay maintenance and cure.

### C. Vickers' Request for Sanctions

Vickers, by way of an affirmative defense raised in response to Atlantic's Complaint, requests dismissal of the Complaint and imposition of sanctions. The Court construes this as a request for sanctions pursuant to FED. R. CIV. P. 11. Rule 11 states in relevant part that:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

>**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

Rule 11(c) requires a motion for sanctions to be made separately from any other motion, and it must describe the specific conduct that allegedly violates Rule 11(b). During the course of trial, Vickers maintained that sanctions are warranted in this case for Atlantic's action in filing what he deemed to be a frivolous Complaint. The Court concludes that Atlantic's Complaint is not frivolous. Therefore, Vickers' request for imposition of sanctions should be denied.

## IV. CONCLUSION

For the reasons discussed herein, the Court finds that the facts and law support the conclusion that Atlantic is entitled to judgment as a matter of law. At the time of the incident on May 18, 2009, Vickers was injured while in the line of duty. He abandoned treatment when he failed to arrive for scheduled physical therapy in October 2009.[5] The Court further finds that Vickers reached maximum medical improvement as of January 7, 2010. The Court finds and concludes that Atlantic has

---

[5] The record reflects that Atlantic nevertheless paid expenses until January 2010.

no further obligation to pay Vickers' medical expenses, or any other amounts, as maintenance and cure. Accordingly, Atlantic is entitled to judgment for the declaratory relief sought.

In light of the evidence, Atlantic's Motion to Dismiss Vicker's Counter-Claim for maintenance and cure should be granted. Finally, contrary to Vicker's assertion, Atlantic's Complaint for Declaratory Judgment was not filed in violation of Rule 11.

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that for the reasons stated herein, Plaintiff Atlantic Sounding Company, Inc., is entitled to judgment as a matter of law on the maintenance and cure paid on behalf of Jimmie Vickers. Atlantic is not liable for any further maintenance and cure, beyond what has been paid, as it relates to Vickers' work-related injury of May 18, 2009.

**IT IS, FURTHER, ORDERED AND ADJUDGED**, that for the reasons stated herein, Atlantic is entitled to judgment on Vicker's Counter-Claim for maintenance and cure, and the Counter-Claim should be dismissed.

**IT IS, FURTHER, ORDERED AND ADJUDGED**, that Vickers' request for Sanctions should be and hereby is **DENIED**. The Court will enter a separate judgment pursuant to FED. R. CIV. P. 58.

**SO ORDERED AND ADJUDGED**, this the 24th day of February, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE